NATHAN MARKOVITZ *vs.* SIMON SWARTZ & another.

Suffolk.    November 11, 28, 1927. — September 20, 1928.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Bills and Notes,* Holder in due course, Consideration.

A few weeks previous to a sale of land, the board of health and selectmen of the town in which it was situated granted permission for its use as a burial ground. The seller and purchaser both were advised by counsel that the title was clear and that the permits were sufficient. A quit-claim deed to the purchaser and a mortgage given back by him recited that the land was to be used only for burial purposes, and the purchaser would not have bought it if he had not believed it could so be used. Shortly thereafter the mortgage note was indorsed to an indorsee who possessed the same information concerning the land as the seller and purchaser and who discounted the note for value and in good faith. Thereafter use of the land for burial purposes was enjoined by a decree in a suit in equity by the town, authorized at a town meeting shortly after the indorsement of the note, the warrant for the meeting having been published before the indorsement. No proceedings ever were instituted to attack the validity of the sale of the land and the purchaser made a partial payment previous to the town meeting. After the entry of the decree, which subsequently was affirmed by this court, the indorsee commenced an action against the purchaser to recover the balance due on the note. The defendant set up the defence of failure of consideration. *Held,* that the plaintiff was a holder in due course and that therefore such defence was not open to the defendant.

CONTRACT. Writ in the Municipal Court of the City of Boston dated July 7, 1921.

The pleadings and material evidence at the trial in the Municipal Court are described in the opinion. The trial judge refused rulings requested by the plaintiff that he was a holder in due course and that the defence of absence or failure

of consideration could not be raised against him. The judge found for the defendant and reported the action to the Appellate Division. The report was ordered dismissed and the plaintiff appealed.

*I. Gordon,* for the plaintiff.

*S. Sigilman,* for the defendants, submitted a brief.

WAIT, J.   This is an action on a promissory note brought by an indorsee against the makers. All defences except failure of consideration were waived at the trial in the Municipal Court of the City of Boston. The case is before us upon an appeal from an order of the Appellate Division dismissing a report, and thereby sustaining a finding for the defendants.

The note was secured by a mortgage of land in Canton, and was given in part payment for the mortgaged land. By the negotiable instruments act, G. L. c. 107, § 51, absence or failure of consideration is matter of defence against any person not a holder in due course; and partial failure of consideration, whether in an ascertained or liquidated amount or otherwise, is a defence *pro tanto.* The defence relied upon, therefore, must fail if the plaintiff was a holder of the note in due course, or if, in law, there has been no failure of consideration.

There is no dispute that the plaintiff when he took the note knew everything in regard to the consideration which was known to the payee and the makers. He knew it was given for land which the payee had sold and the makers had bought for cemetery purposes, both acting in good faith and believing that the land could be used for burials. The deed to the makers of the note, which was a quitclaim in the statutory form, G. L. c. 183, §§ 11, 17, and the mortgage deed back to the payee recited that the land was to be used only for burial purposes. The judge found that the makers of the note would not have taken the land unless they had believed it could be so used.

The statute then in force with regard to land to be used for purposes of burial (St. 1908, c. 379) forbade such use "unless by permission of the town or of the mayor and aldermen of the city in which the same lies," which could not be

given until the location had been approved in writing by the local board of health after public notice and hearing. All parties to the note knew of this language. They knew that on October 15, 1919, after hearing, the board of health had approved in writing for such use a tract of which this locus was part, and that on November 5, 1919, the selectmen of Canton had issued a permit to the Westbourne Cemetery Corporation, the payee of the note. They had been advised both by counsel of buyer and of seller that the title was clear, that the permits were sufficient and were all that the law required. They were not sure that permission of the town must be obtained from a town meeting and could not be granted by the selectmen acting without authority given by a town meeting. They believed, so the court found, that the Cemetery Corporation had acquired and possessed the right to use the land for burial purposes, and that the purchaser would be able so to use it. There is no finding whether they were apprehensive that they might be wrong, and felt that a *bona fide* holder of a purchase money mortgage, who had paid actual money to the payee for the mortgage note, conceivably would stand a little better before a town meeting or a court than either buyer or seller of the land. They had no actual knowledge that the day before papers were signed and the deeds and the note delivered, the selectmen of Canton had authorized the issue of a warrant for a town meeting to be held on January 5, 1920, to see if legal action should be taken by the town to prevent the use of the land for burial purposes. That warrant was published, however, before the plaintiff discounted the note on December 19, 1919. He was fully informed of all these happenings and knew, as fully as any one, the exact legal status of the note. Before the town meeting was held the makers made a partial payment on the note.

At its meeting the town authorized proceedings to restrain use of the land for burials. These were begun January 30, 1920. It has never by vote authorized the use for cemetery purposes. This action on the note was begun in July, 1921, more than a year after the Superior Court had decided in favor of the town and six months after its injunction had

issued.  The answer then filed was general denial and pay-
ment.  This court affirmed the decree of the Superior Court
on January 29, 1925, in *Canton* v. *Westbourne Cemetery Corp.*
251 Mass. 128.  A further answer was filed on April 27,
1925, setting up defences that the plaintiff was not a holder
in due course, and accommodation.  Still later, December 8,
1926, a further amendment added partial failure of con-
sideration as a defence, but did not set out any fact not
theretofore alleged, nor did it allege any rescission or any
offer of reconveyance.

The court found that the land was worth the price agreed
upon and paid, if it could be used for burial, but was worth
greatly less, if it could not be used for the only purpose to
which under the deeds it could be put; that there had been
a failure of consideration to an amount greater than the
balance remaining due upon the note; and that all parties
had acted in good faith.

A holder in due course is defined by G. L. c. 107, § 75, as
one who has taken a negotiable instrument under the condi-
tions that (1) it is complete and regular on its face; (2) before
it was overdue and without notice of any previous dishonor;
(3) in good faith and for value; (4) at the time it was nego-
tiated to him he had no notice of any infirmity in the instru-
ment or defect in the title of the person negotiating it.
There is no doubt that the plaintiff meets the first three
requirements.  The question is whether he meets the fourth.

At the moment of negotiation there was no infirmity in
the note or in the title of the payee.  As between the parties
there existed the possibility that the whole transaction might
be set aside in equity because of a mutual mistake in regard
to the law, but in the nature of a mistake in fact, see *Reggio* v.
*Warren,* 207 Mass. 525, 535, while it was also possible that
the opinion of counsel was sound, or that the town might
vote to permit the use for cemetery purposes.  We do not
consider such a condition an infirmity in the note which can
be set up in this action at law.  The nearest analogy is the
case of a note given in payment for goods sold by sample
which after negotiation of the note turn out not to be up to
the sample.  One who takes such a note with knowledge

of the consideration, but not of the failure, is a holder in due course who can enforce the note for its face value.  *Patten* v. *Gleason,* 106 Mass. 439.  *Goddard* v. *Lyman,* 14 Pick. 268. *Commercial Credit Co.* v. *M. McDonough Co.* 238 Mass. 73, 79.  *National Bank of Newbury* v. *Wentworth,* 218 Mass. 30.

The title of the payee has never been attacked in any proceeding to determine it.  The land, seemingly, has been retained by the purchasers.  The deed contained no warranties except those stated in G. L. c. 183, § 17, which do not include warranty against defects not created by the grantors, nor warranty that the premises can be used for any specific purpose.  There was no fraudulent inducement to prevent examination of the title.  *Parker* v. *Moulton,* 114 Mass. 99. Until impeached by proceedings in equity the grantee's title must be held good.  *White* v. *Dodge,* 187 Mass. 449, 450. This is not a proceeding in equity in which the rights of all parties interested in the entire transaction can be adjusted, and the ultimate loss, if any, be placed upon the proper shoulders.  That loss ought not, in the state of the evidence now before us, to rest upon the plaintiff, although he is not a purchaser for value without notice.  On the evidence before the court, the plaintiff was entitled to the rulings that he was a holder in due course, and that the defence of absence or failure of consideration could not be raised against him.

It follows that the order of the Appellate Division dismissing the report must be reversed and a new trial must be granted.

*So ordered.*